UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

NAOMIE MOTEMONA,
Plaintiff,

v.

NEYMAR DA SILVA SANTOS JÚNIOR
(Neymar Jr.), and NR SPORTS
(Neymar Sport e Marketing Ltda),
Defendants.

Case No. 4:26-cv-01144-Y

FIRST AMENDED COMPLAINT
(AMENDED AS A MATTER OF COURSE)

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Naomie Motemona, appearing pro se, respectfully files this First Amended Complaint as a matter of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(A) and in compliance with the Court's scheduling parameters, and alleges as follows against Defendants Neymar da Silva Santos Júnior ("Neymar Jr.") and NR Sports (collectively, "Defendants"):

I. PARTIES

1. Plaintiff Naomie Motemona is an individual residing at 2821 Las Vegas Trail, Apt 63, Fort Worth, Texas 76116. Plaintiff's designated electronic case email address is nmcontact00@proton.me, and her telephone number is 817-981-0093.
2. Defendant Neymar da Silva Santos Júnior is an individual, public figure, and citizen of Brazil who conducts commercial operations and coordinates digital brand positioning through his primary corporate management firm, NR Sports (Neymar Sport e Marketing Ltda), located at Rua Bento de Abreu, 65 - Boqueirão, Santos - SP, 11045-140, Brazil.

II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) (Diversity of Citizenship) because the action is between a citizen of a State of the United States and a citizen or subject of a foreign state, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.
4. This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a civil cause of action arising under the laws of the United States, specifically the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.
5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred within the Northern District of Texas, where Plaintiff maintains her electronic communication devices, resides, and sustained the severe out-of-pocket economic losses and business interruptions detailed herein.

III. HISTORICAL LAW ENFORCEMENT NOTIFICATION
6. Plaintiff realleges and incorporates by reference all paragraphs above.
7. To document the historical, continuous nature of the digital intrusion, Plaintiff explicitly pleads that she has consistently treated these tracking anomalies as active data safety concerns. Upon observing unauthorized system modifications, Plaintiff engaged official regulatory and law enforcement gateways:
a. In 2022 and 2023, Plaintiff submitted formal identity compromise records via the Federal Trade Commission's IdentityTheft.gov portal to log systemic metadata safety concerns.
b. In 2024 and 2025, Plaintiff submitted electronic tip notifications to the Federal Bureau of Investigation (FBI) documenting a coordinated pattern of unauthorized data interception and remote tracking.

IV. FACTUAL ALLEGATIONS
8. Plaintiff realleges and incorporates by reference all paragraphs above.
9. Beginning in late 2020 and continuing through the present, Defendants, acting directly or through third-party proxy accounts under their direction or control, have engaged in a systematic campaign of digital intrusion, unauthorized metadata extraction, and multi-platform identity tracking targeting Plaintiff.

The Anchor Vector and Silent Mirror Interception Mechanism
10. In 2024, Plaintiff publicly displayed her primary commercial telephone number ending in 5877 on a public WhatsApp group channel to coordinate client interactions for her solo styling venture, Naomie's Hair Braiding.
11. Defendants utilized this public telephone indicator as an anchor vector to locate and target Plaintiff's cellular and cloud network profiles.
12. Rather than executing standard account logins that trigger consumer-end "Linked Device" warnings, Defendants deployed background data-scraping protocols and remote screen-mirroring software. This mechanism bypassed standard end-user alerts, allowing unauthorized access to the live visual layout, keystrokes, application activity, private WhatsApp calls, files, and personal graphics on Plaintiff's mobile devices.

Forced Digital Displacement and Identity Registry Scans
13. To mitigate the ongoing tracking, Plaintiff was repeatedly forced to undergo digital displacement, replacing her mobile handsets and completely deleting her primary Facebook and Instagram profiles between 2020 and 2021, explicitly revoking all consent to be monitored or observed.
14. Defendants bypassed these manual privacy measures by executing automated keyword scans and database analytics queries across multiple major platforms (including Instagram, TikTok, and YouTube), targeting Plaintiff's legal name and her proprietary handle current and former variations, including wildcard alphanumeric structures of "drcnana" ,"ldnnana", "drcnanababe";and "nanababe" .
15. The moment Plaintiff established new privacy-focused accounts using these unique customized character variations, Defendants' automated infrastructure flagged the handles, bypassed user blocks, and extracted her updated profile footprints.

Co-Conspirator Data-Masking Loop and Mirroring Chronology

16. Defendants routed Plaintiff's intercepted screen captures, personal files, and real-time activities to a network of third-party proxy creators and accomplices, who then staged public character mimicry, narrative replication, and public media campaigns matching Plaintiff's unshared device contents.

17. To conceal this data-harvesting loop from Plaintiff while broadcasting it to a global audience, Defendant Neymar Jr. utilized targeted user-specific account restrictions—specifically Instagram's privacy toggles, "Hide Story", and "Close Friends" parameters.

18. Defendant Neymar Jr. systematically timed these story-hiding settings to block Plaintiff's unique username variations during active periods of timeline mirroring, masking the underlying intrusion. The chronological proximity between Plaintiff's private device activity and Defendants' targeted story-blocking configuration demonstrates an intentional, multi-party data exploitation loop.

V. FIRST CAUSE OF ACTION

Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030)

19. Plaintiff realleges and incorporates by reference all paragraphs above.

20. Defendants intentionally accessed Plaintiff's protected communication devices and cloud profiles without authorization, or exceeded authorized access, and thereby obtained information from protected mobile devices.

21. Defendants' conduct caused a "loss" to Plaintiff within the meaning of 18 U.S.C. § 1030(e)(11) that aggregates far in excess of the mandatory $5,000.00 statutory threshold during a one-year window under 18 U.S.C. § 1030(g). This loss metric is composed of the following items:

a. Business Interruption Losses: The continuous data exploitation and multi-platform harassment completely halted commercial operations for Plaintiff's styling venture, Naomie's Hair Braiding, forcing the business into an inactive state and causing a total loss of commercial opportunity over $5000 in losses.

b. Direct Out-of-Pocket Response Costs: Defendants' ongoing tracking and the resulting severe disruption and relocation needs , thus created forced financial constraints that out-of-pocketed Plaintiff an extra $780.00 in a single transaction via a mandatory Risk Management High-Risk Fee required to secure basic residential housing at current residence ..

c. Verification Overhead: Expenses associated with ongoing technical remediation, device forensic checks, and necessary hardware replacements to secure communication lines.

VI. SECOND CAUSE OF ACTION

Intrusion Upon Seclusion / Invasion of Privacy

22. Plaintiff realleges and incorporates by reference all paragraphs above.

23. Defendants intentionally intruded, electronically and covertly, upon the private affairs, solitude, and seclusion of Plaintiff by utilizing background screen-scraping protocols and cross-platform identity mapping systems.

24. This intrusion monitored Plaintiff's private communications, real-time location parameters, and unshared personal graphics. Such conduct is highly offensive to a reasonable person, violates basic societal norms, and constitutes a clear violation of common law privacy rights.
25. As a direct and proximate result of Defendants' intrusions, Plaintiff has sustained severe disruption to her safety, peace of mind, and daily life.

VII. THIRD CAUSE OF ACTION
Intentional Infliction of Emotional Distress (IIED)
26. Plaintiff realleges and incorporates by reference all paragraphs above.
27. Defendants' conduct in executing covert remote mirroring, masking surveillance data via platform privacy tools, and utilizing stolen metadata to coordinate public mimicry campaigns was extreme, outrageous, intentional, and malicious.
28. Defendants acted with reckless disregard for the probability of causing severe emotional distress to Plaintiff. This conduct directly resulted in severe emotional trauma, anxiety, and forced digital displacement, severely impacting Plaintiff's health and economic well-being.

VIII. PRAYER FOR RELIEF
WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, granting the following relief:
1. A permanent injunction ordering Defendants, their agents, representatives, and anyone acting in active concert with them, to immediately cease all digital surveillance, hidden screen-mirroring, data interception, and automated keyword tracking of Plaintiff's legal name, electronic devices, and proprietary handle variations;
2.An order requiring Defendants to permanently delete, scrub, and destroy all unedited metadata, photographs, file captures, and chat logs unlawfully obtained from Plaintiff's device history;
3. Award Plaintiff compensatory, consequential, and economic damages in an amount to be determined at trial to fully cover her financial out-of-pocket moving costs, device remediation overhead, and business interruption losses;
4.Award Plaintiff punitive damages in an amount to be determined at trial to punish Defendants' willful, malicious, and intentional violation of Plaintiff's privacy rights and to deter such behavior in the future; and
5.Grant any such other, further, or administrative relief as this Court deems just and proper.
Respectfully submitted

Dated: November 04, 2026 /s/ Naomie Motemona

Naomie Motemona, Plaintiff Pro Se
2821 Las Vegas Trail, Apt 63
Fort Worth, Texas 76116
Email: nmcontact00@proton.me
Phone: 817-981-0093